Second case of the day, the United States v. Armour. Mr. Hillis. Good morning. May it please the court. Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. And I represent Mr. Charles Armour. He raises three issues on appeal. First, the district court erred by relying on information that was not alleged in the petition to revoke Mr. Armour's supervised release. The information was instead contained in a violation memorandum. And according to the violation memorandum, Mr. Armour left his residence, lied about having a third party custodian, and tested positive for marijuana. But those were not allegations that were included in the petition. And there was no reliable information presented to support those allegations. They were merely contained. Why don't you address, if you would, initially the waiver point that the government raises in this regard. I don't think it's a valid argument, Your Honor. There's nothing where he ever said, I admit the contents of the violation memorandum. There was no proof that was ever presented to say that he did those things. The violation memorandum itself, maybe we should start with that. There was not a valid basis to create the violation memorandum, much less submit it to the district court. There's nothing in Rule 32.1 that allows it. And so I don't see how you could have waived it. How about Section 3661? No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. Why shouldn't that apply at a revocation of supervised release? I believe it's designed to apply at the sentencing for a criminal conviction, not for supervised release. Is there any difference? I mean, for these purposes? Yes. Well, of course there is because we cannot import everything from a criminal context into a revocation context. We couldn't do that for a jury trial. Does the defendant have a right to put on mitigating information in a revocation hearing? Yes. Sure. It's not relevant to whether he committed the violation, but it's relevant to deciding the appropriate disposition. Why isn't aggravating information also relevant? Because aggravating information would be a character of a different sort. It would be something that if it's used to increase the person's sentence, if it's a basis for a violation, it should be included in the petition. It shouldn't come in some document prepared by somebody who's essentially a case agent. We don't allow police officers to submit reports to the district courts. Why would we allow somebody serving in a law enforcement capacity? So your position is that the probation officer can't submit any written report at the revocation hearing? Because here's what I'm struggling with. Why isn't that violation memorandum an efficient way for the probation officer to update the judge on the person's status? And the defense had the right to object to anything in it, right? I would say this. Efficiency is not the issue. Yeah, but will you answer it? Why isn't it an efficient way for the probation officer to update the judge on the person's status? One, and the defense has the right to object. Yes. Right? Yes. But may I answer further? Yeah, go ahead. The efficiency is not the issue. It's due process. It's Rule 32.1. But he's got it. The defense has it, sees it, has a chance to object, can put on evidence to the contrary, can demand that the government provide more than what's in that violation report? Well, then we faced a similar circumstance in Jordan. We didn't allow the police report to put on evidence. In Jordan, there was an objection. Yes. You don't think that makes a difference? Oh, I think that it makes a difference, but of a different sort, because we have no basis to create the violation memorandum here. We have a basis to create the police report in Jordan. But if I may, putting the probation officer on as the witness is the solution to the problem. We don't need the memorandum. What did you call him? It was not my case. I did not call him. I mean, what you're asking us to do is you're asking us for a complete do-over without, as near as I can tell, ever disputing the accuracy of the information in the violation memorandum, and without any objection having been made by counsel or Mr. Armour at the time to say none of this is true. Right? Your Honor, if the information is adverse, it should not be our burden to call the adverse witness to present adverse testimony. We would never do that. That would make no sense for our case. Consider a PSR in an ordinary sentence. If you want to dispute it, you've got to dispute it, right? Yes. And the PSR, though, has a basis in law for its preparation. The violation memorandum does not. It is unique to the Central District of Illinois, so far as I can tell. Why are other districts not doing it if it's efficient and if it's allowed? I would think it's a uniform practice, and yet it is not. Oh, but there's a lot that's not uniform in the law, unfortunately. So much for federal rules. Yeah, that's true. It's a lot that's not uniform. I just have the same problem that Judge Hamilton has. I don't understand. I don't see anything that prohibits this. Defense got to see it, could have objected. In fact, he did object. It should be alleged improvement. He did make one factual objection. Yeah, one. But only one. The memorandum, I think, is akin to a police report, and it's from an adverse witness, essentially. And if an adverse witness is to be presented, it should not be through the form of a written document. It should be subject to cross-examination and testimony. The court counsel can consider a police report if there's no objection to it, right? Yes. And here there was no objection except one trivial factual issue. There was no admission to it either. There was nothing to establish its validity. Surely there was no doubt the district court thought it was relevant? The district court, I don't believe, ever had the thought that the material couldn't be considered. Right. Defense counsel never suggested it. Yes. And there's still no factual dispute on any of these things. It is still inconsistent with Rule 32.1 and due process for the preparation of it, much less its consideration. And if the information is not ultimately reliable, it's something that we can interject on appeal as we've done here. So you think this was a good practice defense counsel engaged in, not making an objection? Here's my thought on that, Your Honor. If this is an ongoing practice that's been present for decades, it would seem normal and we wouldn't object to it like we wouldn't for standard conditions of supervised release once upon a time. But when you shine the light of day on the practice and you reveal that it's something that shouldn't be done, it shouldn't continue on and it makes little difference if he did not say anything about it. And now for the next case where this kind of violation memorandum is filed, there can be an objection made. The court can squarely address the issue. Yes, or the better practice is to stop writing them in the first place. Present the witness in accordance with Rule 32.1 and due process. Why should we allow this to go on and require somebody to continue to object to something that's invalid? At this point, it hasn't been objected to. At whatever point different theories come to defense counsel at various points in the whole system, objections are made for the first time and then the court gets to actually look at them. It doesn't matter how long the practice has been going on, but it's unfair to the district judge, to hold a district judge to some inquiry the district judge should have made when it wasn't brought to the judge's attention. All I can do is raise it on appeal now. Yeah. If you had been counsel, you would have demanded the probation officer. And would you have asked the probation officer if he or she had a violation memo? I would have objected. And I did represent Mr. Armour at an initial phase of these proceedings. But I just think that it's something that, in retrospect, it should be objected to, it shouldn't be done. But I'm suggesting you have the probation officer following best practices, as you would suggest should be followed here. Wouldn't you want in the ability to cross-examine any work product that was produced? So wouldn't this memo have surfaced in the normal course of your requiring that of the probation officer? I would object to the preparation of the memo. To the preparation even? Yes. I don't think it should be prepared or submitted, much less considered. The probation officer should just represent, based on recollection, what he or she considers a violation? If the disclosure is to be made under Rule 26.2, the probation officer has to be called before I can trigger that obligation. Right. So I'm in a better position not having an adverse witness take the stand. But when the probation officer does, I would then ask for the work product. I would ask for an adjournment so I can consider anything I need to consider. So why not get it in advance so that you can study for the cross-examination? Why not keep it all together? It sounds like your position here is that the less anybody knows about this case, the better. The less bad information anybody ever knows about my clients, the better. Okay. But as a district judge, I've got to say, it would make a big difference to me, for example, if we've got drug tests that are mandatory revocation, for example. It would make a huge difference to me whether the fellow has been resisting supervision from the get-go or has basically been cooperative, and the revocation is required because of kind of a first screw-up. That makes a huge difference, just as parallel information would in an ordinary sentencing. And you're saying that may not be presented to the court. No. It can be presented, but through live testimony. Even if there's no objection. Okay. Well, you may want to talk about some other issues. Yeah. So on this, the language, the judge used some language from 3553A, but isn't it clear the judge was really troubled by the beating of the 8-year-old son? Now you agree that the judge could consider the beating. Yes. All right. And the judge did consider it, although used language that was more, you know, came from that statute rather than the correct statute. So what's the harm when you've agreed that the judge could consider it? It can't be the predominant factor in the judge's consideration, and I think that Clay would support us on this. I acknowledge some recent contrary authority in this court's recent decision in the United States versus Ford that discusses what the district court can consider by way of the factors. But nevertheless, the predominant factor should not be the one that the district court relied on. But that would be a basis to vacate, and there is a stronger basis to vacate, and if I may address that. And that is the failure to justify the length of supervised release. Under this court's jurisprudence in Thompson, the failure to justify the one-year period of supervised release, and there is no justification, there's nothing in the record, there's nothing the government cited to, that is a requirement under Thompson that would lead to the reversal, the vacation of the sentence here, and then the district court can state what are the appropriate factors. And I think if it's going to go back anyway, it would be appropriate to consider whether or not the violation memorandum should have been considered, and yes, Judge Hamilton, to essentially have a do-over here, so the process could be correct. And then the result would be more valid. Speaking of do-overs, Mr. Hillis, this revocation hearing was held about two months after the Thompson decision came out. There are some references in the briefing to defendant having objected to, quote, all discretionary conditions. What was the objection? I kept looking for some specific indication. To all discretionary conditions? Yes. It's a blank of protection so that the condition. Well, ordinarily you have to state a ground for an objection to put the court on notice. What was the substance of the objection? Well, it was more particularized in the filings by trial counsel, and he did specify about why he thought a particular condition was invalid. Where do we find those? Well, there was a written filing, but it would at least preserve the issues that we have raised. To just say I object? Yes. You think that's enough? On a discretionary condition that has to be justified by the court in the first instance, I think that the practice of counsel in this case was adequate. Two months after Thompson came out, let me just ask, why shouldn't we not apply our usual rules of plain error and waiver? Well, because he objected, I don't think that we could say that it was waived. As for plain error, I think that the appropriate standard of review is abusive discretion, and the lack of 3583D findings here would be an abusive discretion. And if I may also move on to the vague and overbroad conditions, those can't be valid even under plain error. And I think under Adkins we have a legal basis, a strong one, to contend those things. I don't know what a dangerous weapon is, for instance. I didn't get any clarity from the government's submission on that. There's nothing in the district court. Well, there's a definition under 1B11. The definition is in the guidelines. Judge, I've read that definition. I don't find it helpful or dispositive. Have you ever seen somebody revoked for sitting on a chair as opposed to swinging it at somebody's head? I wouldn't want to have it happen. I'd rather object to the dangerous weapon characterization before he's in jail. Have you ever seen actual revocations based on the kinds of hypotheticals that worry you here, going to church? No, but I'm troubled that the conditions exist in the first place. The fewer restrictions on my client's freedom, the better. The less we have as a basis for him to wind up in prison. We understand that, but we also understand he's a convicted federal offender. Yes. Who has then committed more crimes and violated the conditions of his supervised release, so his rights are limited. Yes, but they should also be clearly spelled out to him so he knows what his restrictions are and the conditions don't do that. The dangerous weapon prohibition does not tell him what is prohibited conduct, such that he can be revoked. So your Honor says about a chair, how about a steak knife? How do you think the judge appraised it so it's satisfactory to you? No use of a dangerous weapon? Give us some language. I think the whole mess is easily avoided by having a condition that prohibits him from committing another crime, which we have. That's a mandatory condition. So it's not that he has a chair, it's what he does with it. And that's what the Watts case talks about, essentially. So in Watts, it was a matter of criminal conviction, but somebody's beaten with a chair. So is it your position as a judge, because I want to get back to my question, that a judge cannot phrase it in any way, this whole no dangerous weapons condition that would be satisfactory, that it should just be encompassed in not commit another crime? So language like no use of a dangerous weapon, that wouldn't be good enough? It wouldn't be good enough. There has to be an explanation. And under Kappus and Thompson, that would be our support. It has to be clearly defined. And the Hoffman Estates case from the Supreme Court supports us as well on that. If they want a condition, make the condition a valid one by clearly explaining what is prohibited. That is not done here. So the condition is not valid. I can't offer an alternative because I think that the attempt, while it's evident for its purpose, the actual structuring of the language is going to be problematic. So he needs not only to commit another crime but be convicted so that we can establish that it's criminal conduct, Mr. Hillis? Unfortunately, under supervised release, he does not need to be convicted. That's right. So when you say crime, just what, charged? Well, how are we going to use crime in your lexicon? Well, in my lexicon, it's no different than what is already available in the case law. It is that the criminal offense has been charged. It then doesn't have to be proven beyond a reasonable doubt. It has to be proven by a preponderance of the evidence. And so back to the chair example, if you strike somebody with the chair, it is the mens rea through the conduct that makes it a crime. And whatever he uses is almost irrelevant for the purposes of that. That's why I fall back on what the mandatory condition is and why it is with the scienter requirement that we have a solution to this problem in any event. But the actual definition in this case is lacking, and so the condition is invalid. Could I ask you briefly to address your objection to the requirement that a supervisee report contact with law enforcement? Yes. It's a link in a causal chain, perhaps. And so I think we relied on Heibel and Hoffman in that case. And you suggest in your brief that the probation officer should simply be relegated to checking the NCIC on everybody that he supervises? Probation can get the information however it wants, but not through a compulsory disclosure from my client. Could you address Minnesota against Murphy then, which seems to suggest that somebody on probation or parole or supervised release can be required to report just as a witness can be subpoenaed to answer questions truthfully? I would draw the distinction that it's not probation or parole. It's supervised release. And so the context is different. What's the difference? Because parole is an act of grace. Probation is being out of prison in lieu of imprisonment, being subjected to conditions that you agree to. That is not the case here. Somebody is on supervised release mandatorily, not through accepting conditions in lieu of incarceration. Yeah, but it's called supervised, Mr. Hillis. I beg your pardon? It's called supervised. It isn't called release. Yes, yes. So built into that is some sense that there's a need to respond to some specifics. I appreciate how strongly you feel about the specifics. I'm doing my best. But in any event, Minnesota v. Murphy also, Your Honor, it didn't contemplate the Fifth Amendment issue that we are now specifically raising. I mean, it addressed it in a different context, I guess, is the proper way to explain that. Sure. But the presumption was just as a civilian can be subpoenaed and expected to answer questions without having to be given a Fifth Amendment warning, somebody on probation or parole can be, and I don't see the difference. Except the language of the conditions talks about it being no greater restriction on their liberties as is necessary. So we have an alternative now. We have NCIC problem solved. We don't have to get it through my client. We've got law enforcement. Thank you, Mr. Hillis. Thank you. Mr. Bell. I think you may please the court, Jason Baum, Mr. Hillis. Mr. Armour made intentional choices in the district court on how to pursue his supervised release, and those intentional choices have consequences to his appeal here. One of those intentional choices was not to challenge the violation memorandum. And it's standard practice in the Central District of Illinois regarded as efficient, Judge Williams. And even on appeal, I'll note that in their reply brief, it's on page 9, footnote 1, they ask that if this goes back, that, quote, all communication should be done via written materials, which are provided to the releasees. That's exactly what the violation memorandum is. It's ironic to say the least, to say on the one hand, the violation memorandum is inappropriate, and then on the other hand say, but when you go back, please do exactly what we're saying was inappropriate in the first regard. When you don't object to the facts in the violation memorandum, there's no need for the district judge to say, well, government, call your first witness to prove up the undisputed facts. There's no reason to treat this any different than a PSR. So what do we make of his argument that violation memorandum should be prohibited? It shouldn't be prohibited. The probation officer has a duty to keep the district court informed of the conduct of the supervised releasee, and really what this would do is prohibit the very duties that the probation officer has. There's no reason to prohibit it, especially when it's provided in advance. He can object to what's contained in it. He can put on mitigating evidence. And there was an analogy to trial and how this is different than sentencing in the first place because there's a trial. Well, sentencing information that's aggravating is not admissible at trial. It's admitted at sentencing to help determine the sentence. It's not admitted at the trial. Same thing here. And not only did he waive the challenges to the violation memorandum, he did waive, Judge Hamilton, you asked about conditions of supervised release. In their sentencing commentary, it's record 61 in this case, they make this blanket, we object to all discretionary conditions. But they say if the court imposes supervised release with regard to two of the conditions, they say no additional objection. That is waiver with regard to those two supervised release conditions. You can't make a blanket objection to supervised release and keep everything alive. When you say no objection, the district court can adopt the unobjected two portions of a PSR, and she was appropriate to adopt the unobjected two portions of the violation memorandum, including those conditions. Is it correct that all of the conditions imposed were part of the violation memorandum? No. They were all a part of it except for the dangerous weapon ban. That, however, we believe is still readily anticipated. It was imposed on him twice before, on his first term of supervised release, while he was on bond, and it's provided for in both the statute and the guidelines. So we still believe plein air is applicable to that condition because there was no objection to it, which is an easily anticipated objection. Now we've suggested before that instead of saying a person can't be with convicted felons to try to get to the conduct, so to say that he can't be with persons engaging in or planning to engage in criminal activity, isn't that really the heart of the government's concern? That's true, but I don't think still the judge, and I think there's an important distinction here. Previously there was you can't be with felons. There was no scienter requirement. It was just strict liability. You can't be with a felon, so if your coffee is handed to you through the window by a felon, you violate the supervised release. The difference here is that he has to know they're felons, and when he knows they're felons, all he has to do is go to his probation officer and say, I'm going to church with this felon and get permission. It doesn't prohibit him from contact with felons. It requires him to report it to the probation officer and get approval for it. That's different than just a strict liability, you can't be with felons, and I think that would save the condition under the standard of review here. Many of the points I was prepared to address have already been discussed, so I'd be happy to answer any further questions that the panel might have. Apparently not. Thanks. Thank you. Mr. Hillis, you used all your time, but you've got a lot of questions, so I'll give you a couple of minutes. We used all your time. We used your time, and I know you must have some comment that you'd like to advance at this time. You used my time productively, so I appreciate that. As for what I have to say in response, the footnote one that the government refers to, we are talking there about criticism that we'd have or concern that we'd have about a sentencing council practice, ex parte communications, and so we don't want that sort of ex parte communication. The written material, the suggestion that it come in written form, it's at least so that we have some notice of it. The better practice is to have none of it. Put the live witness on the stand and testify about what the conduct is. Don't you want to know what he's going to say in advance? Yes. And how are you going to get that without the memorandum? Because once they take the stand, I'm going to ask for all the Rule 26.2 disclosures, and then I'm going to know everything that I need to know, much more than him coming in the way that they do right now with the memorandum. May I also say that when the objection that made to the supervised release, it was clearly phrased in the alternative. We oppose all conditions of supervised release, but alternatively, if the conditions are to be imposed and then there's an argument made about those. And then in respect to also footnote one, part of what we are concerned about, too, is not just the export communications, but we don't get everything that we'd like to get from probation. We'd like to get the recommendation about the length of imprisonment that the probation officer is recommending and why in the United States versus Ollie Peterson, this court discussed the salutary practice of making that sort of disclosure, but we don't get that material. We would like to get everything in court, in the open, and if they want to provide us the materials before the adverse witness testifies, the Rule 26.2 materials, we'd love to have those. But if they don't give them to us in advance, we'd then ask for the adjournment, which we'd be entitled to. It'd be a longer proceeding. So I think the better practice is to have full disclosure, but present the person so they're subject to the cross-examination. And then we have the benefit of having those materials so we'd be well-prepared and we wouldn't need to seek the adjournment. So then you would like the materials in advance? I'd like, yes, everything. That's what, because that... But in the right fashion, in accordance with the rules, I guess is the thrust of it. Just so I understand, because I really appreciate your advocacy, is it your position, or that of the federal defender for the Central District, that you oppose all conditions, or do you oppose conditions that are not specific enough and obviously are too vague? My position, and I won't speak for the office on this, is start with the mandatory ones and work your way up from there. Because conditions are restrictions, and the life better led is with fewer constrictions in conditions of supervised release. That is also in accordance with the statute. The statute talks about conditions that can be imposed, not that they all should be, and the requisite findings need to be made. And if you look at the language of the statute, it's onerous, and yet it's slipped by for so long. And we don't look to either, not just about the findings that need to be made, but they need to be made in the conjunctive. Well, I understand your concerns, because this is an area that obviously interests me and I respect your advocacy. But, well, unwarranted restrictions clearly are not appropriate. Would you agree there's a benevolent side to supervised release, that the conditions are to help guide someone in that situation? Now, they may be abused by various law enforcement or probation officers, but is there not, built into supervised release, some sense of guidance for the individual? Absolutely. But I'd rather that carrot doesn't come with a stick. Let it be the individual's choice. I don't hold a cloud over probation or law enforcement. I would rather my clients, though, not be subject to things that have penal consequences. And that's what's at play here. So the conditions, if they need to be imposed, findings need to be made, but I'd start with zero and work my way up from there. I'd start with the mandatory ones, work my way up from there. But the practice has instead been, start with all, or put your arms around as many as possible, and then leave it to us to fight our way out of them, and people go to prison in the bargain. That's what I try to avoid. Thank you, Mr. Ellis. Thank you. Case is taken under advisory.